57 So.2d 218

MOTTET v. LIBBEY–OWENS–FORD
GLASS CO.

No. 40183.

Jan. 14, 1952.

Rehearing Denied Feb. 18, 1952.

Hussey & Smith, Lunn, Irion, Switzer,
Trichel & Johnson, Charles O. Hardey and
Harry A. Johnson, Jr., all of Shreveport,
for relator.

Jackson, Mayer & Kennedy, Shreveport, for respondent.

PONDER, Justice.

The plaintiff brought suit seeking to recover compensation for total and permanent disability and medical expenses. The defendant opposed the suit by pleading peremption and denying that plaintiff's disability resulted from an accident and averred that the disability resulted from an occupational disease. On trial, the lower court gave judgment sustaining the defendant's plea of peremption and ordered the suit dismissed. A rehearing was granted and the judgment was set aside and judgment was rendered in favor of the plaintiff for compensation at the rate of $20.00 per week for a period not to exceed 400 weeks, the first payment falling due on March 18, 1947, and $500.00 for medical expenses. On appeal, the judgment was reversed and the plea of peremption was sustained and plaintiff's suit was dismissed. La.App., 49 So.2d 38. Plaintiff applied for and was granted a review.

The allegations of plaintiff's petition and the evidence adduced in support of them were not refuted by the defendant, as stated in the opinion handed down by the appellate court. The facts are practically undisputed. The plaintiff is a glass cutter and has pursued that trade since 1913. He was first employed by the defendant for a short period of time in the year 1922 and thereafter worked for another company un-til he was permanently employed by the defendant in 1925 and remained in the defendant's employ until the date of his disability in the year 1947. In the course of his employment, the plaintiff handled large sheets of glass, some 50 inches in width, weighing from 90 to 100 pounds each. In the course of an average day's work, he handled some 100 sheets of glass, more or less. It was necessary to handle each of these sheets twice and the plaintiff, during a working day, lifted approximately 20,000 pounds of glass. The plaintiff had been troubled with some back aches and pains over a period of years but none were of standing duration or of such severity as to cause him any loss of time from work. On January 27, 1946 the plaintiff experienced a very acute pain in his back shortly after noon on that date. After he completed his day's work, he consulted his physician, who diagnosed plaintiff's condition as neuritis. The plaintiff continued to work until his regular vacation in September 1946, at which time he visited Johns-Hopkins Hospital in Baltimore and was examined by an orthopedic physician. The examination and x-rays of plaintiff's back disclosed a partial thinning of the fifth lumbar intervertebral space. On his return, the plaintiff continued to work, but was changed from cutting heavy glass to work on light glass, which did not entail as much strain in weight lifting. He was changed to this work at his request. He continued cutting light glass until March 11, 1947 when his condition became so painful that

he was forced to quit work and has remained totally and permanently disabled and unable to perform any work of any reasonable character. Examination by local orthopedic specialists, made at various periods subsequent to September 1946, bore out the diagnosis of the specialist of Johns-Hopkins Hospital, which appears to be synonymous with a protrusion or herniation of the fifth lumbar intervertebral disc. There is no question as to the nature of the injury and its disabling character or that the accident and injury arose out and occurred in the course of the plaintiff's employment.

The plaintiff contended that his case came within the exceptions provided in Section 31 of Act 20 of 1914, as amended, LSA–R.S. 23:1209, "where the injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops". The contention is based on the ground that the injury did not develop and that the plaintiff did not become disabled from the injury until March 11, 1947 when he was forced to quit work because he was no longer able to perform the duties required in glass cutting. The Court of Appeal, Second Circuit, was of the opinion that the accident and resulting injury resulted on January 27, 1946 when the plaintiff first felt the severe pain and that the plaintiff, having failed to file his suit within one year from that date, that his claim was barred under the provisions of Section 31 of Act 20 of 1914, as amended. We cannot agree with the holding of the appellate court. The Workmen's Compensation Act was amended by Act 29 of 1934 so as to provide that the prescription or peremption should not commence until the injury had developed. In our opinion this amendment was designed to take care of cases similar to the one herein involved. From the very wording of this amendment, an employee who receives an injury flowing from an accident that later develops into disability is excepted from the general rule and his right of action is not perempted until *one year after the injury has developed*. In this case the injury *did not develop into total disability until March* 11, 1947, at which time the plaintiff could no longer pursue his trade as a glass cutter. For us to say that he was disabled to perform the duties of his trade prior to that time would be mere conjecture on our part because he had, in fact, continued to perform the duties of his trade until that date. His suit was filed on August 4, 1947, a short time after he became disabled, and within a year from that time. Such being the case the plaintiff's suit was timely filed and the plea of peremption cannot be maintained.

The defendant has cited excerpts from numerous opinions of the appellate courts of this state to the effect that an employee who has suffered an injury is not required to continue in the performance of his duty in order to recover compensation and that

his cause of action arises at that time. The facts in the cases cited are entirely different from the one we have under consideration but, be that as it may, the present case comes clearly within the exception contained in Section 31 of Act 20 of 1914, as amended, and especially as amended by Act 29 of 1934, which provides that the peremption does not commence until the injury has developed.

The defendant contends that credit should be given for the wages paid the plaintiff as night watchman after he became disabled to carry on his trade of glass cutting. It appears that after the plaintiff had become disabled to perform the duties of his trade he was employed by the defendant as night watchman. As pointed out in the case of D'Antoni v. Employers' Liability Assurance Corporation, 213 La. 67, 34 So.2d 378, the suit of an employee who is actually earning wages cannot be dismissed on a plea of prematurity because he is not receiving compensation and conversely if the wages paid him are in reality a gratuity and not for the performance of the work that the payment of such wage or gratuity is equivalent to the payment of compensation. It is well established that disability to do work of a reasonable character is deemed total whenever it appears that the injury causes a total disability to continue carrying on the trade or work for which the employee is suited by training and experience or to do any work of a similar character. Ranatza v. Higgins Industries, 208 La. 198, 23 So. 2d 45; Hughes v. Enloe, 214 La. 538, 38 So.2d 225. In Ranatza v. Higgins Industries, supra, this court pointed out that the disability to perform work of a similar character as that engaged in is considered total disability within the meaning of the compensation law notwithstanding the injured employee may have succeeded in obtaining employment, after the accident, of a different kind and not requiring any special skill or training. The wages paid the plaintiff as night-watchman were earned in a different kind of work, not requiring any special skill or training, and cannot be considered in the nature of compensation or given credit on the award of compensation to the plaintiff.

For the reasons assigned, the judgment of the Court of Appeal, Second Circuit, is reversed and set aside; the judgment of the lower court is re-instated and affirmed. All costs to be paid by the defendant.